Citation Nr: 1513869 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 12-20 070 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for a left forearm muscle injury, to include on an extra-schedular basis.

2. Entitlement to an initial compensable rating for left forearm scarring associated with left forearm muscle injury.

3. Entitlement to an initial rating in excess of 20 percent for upper left ulnar nerve neuropathy associated with left forearm muscle injury.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran and his wife
ATTORNEY FOR THE BOARD

James R. Springer, Associate Counsel


INTRODUCTION

The Veteran had active duty service from January 1953 to January 1955.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boise, Idaho, which continued a 10 percent evaluation for a left forearm muscle injury. Jurisdiction was subsequently transferred to the RO in Seattle, Washington.

In a May 2014, the RO increased the Veteran's rating for the left forearm muscle injury to 20 percent, effective January 2, 2014. In addition, service connection was established for left forearm scarring and assigned an initial, non-compensable rating, effective January 2, 2014. 

In a subsequent January 2015 rating decision, the RO increased the Veteran's rating for the left forearm muscle injury to 30 percent, effective October 27, 2008 (the date the Veteran filed his claim). In addition, service connection was established for left ulnar nerve neuropathy, which had previously been rated with the left forearm muscle injury under Diagnostic Code 5307. The RO assigned a separate 20 percent rating, effective January 2, 2014. 

The Board notes that the Veteran has not submitted a notice of disagreement to either the May 2014 or January 2015 rating decisions; however, the Board finds that his disability rating for scars and neuropathy arose out of the claim for an increased rating for a left forearm muscle injury, which is currently before the Board. As such, the issues of entitlement to an initial compensable rating for left-forearm scarring and entitlement to a rating in excess of 20 percent for upper left ulnar nerve neuropathy is before the Board as part of the Veteran's claim for an increased rating for his service-connected left forearm muscle injury. Jones v. Shinseki, 23 Vet. App. 122, 125 (quoting Juarez v. Peake, 21 Vet. App. 537, 543 (2008) (holding that once an NOD has been filed, further RO decisions, which do not grant the benefit sought, cannot resolve the appeal that remains pending before the Board, and only a subsequent Board decision can resolve an appeal that was initiated but not completed)). Accordingly, as those matters are now part and parcel of the Veteran's original claim, the Board has recharacterized the issues on appeal as encompassing all three matters.

A travel Board hearing was held in September 2014 before the undersigned Veterans Law Judge, and a copy of the hearing transcript has been added to the record.

In November 2014, the Board remanded the Veteran's claims for additional development. The Board finds that the Agency of Original Jurisdiction (AOJ) substantially complied with the remand orders with regard to the claims decided herein and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not necessary under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002)).

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran is right-hand dominant.

2. Effectively, since October 27, 2008, the date the Veteran initiated his claim for an increased rating for a left forearm muscle injury, he has had a 30 percent rating, which is the highest possible schedular rating for this disability under the applicable diagnostic code.

3. The Veteran's left forearm muscle injury does not present such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards regarding this disability.

4. The Veteran's left forearm scarring manifested as a superficial, linear scar with subjective complained of pain, but has not resulted in unstable scars; painful scars; superficial and nonlinear scars with an area greater than 144 square inches or greater; deep nonlinear scars with an area of at least 6 inches; or located on the head, face, or neck.

5. The Veteran's upper left ulnar nerve neuropathy is manifested by moderate incomplete paralysis, moderate paresthesias and/or dysesthesias, and numbness; the Veteran suffers from decreased wrist extension, grip and pinch.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 30 percent for a left forearm muscle injury, to include on an extra-schedular basis, are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.73, Diagnostic Code 5307 (2014).

2. The criteria for an initial compensable rating for left forearm scarring are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.118, Diagnostic Codes 7801-7805 (2014).

3. The criteria for an initial of 30 percent for upper left ulnar nerve neuropathy are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.124a, Diagnostic Code 8516 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

VA's Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has addressed the notice required for increased rating claims, essentially stating that general notice is adequate and notice need not be tailored to each specific Veteran's case. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

With regard to the Veteran's claim for an increased rating, VCAA notice requirements were sent to him in a December 2008 letter. This VCAA letter informed the Veteran of what evidence was needed to substantiate his claim for an increased rating, and also informed him of his and VA's respective duties for obtaining evidence. Thereafter, the case was adjudicated by way of a May 2009 rating decision, he was issued a statement of the case in July 2012, and supplemental statements of the case were issued in May 2013, May 2014, and January 2015. He has also been advised as to how disability ratings and effective dates are assigned.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of STRs and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The claims file contains STRs, private and VA medical records, and the Veteran's own contentions. He has also been given multiple VA examinations in conjunction with his claim. He has not alleged that the VA examinations are inadequate for rating purposes. The Board finds that the examinations are adequate in order to evaluate the Veteran's service-connected disabilities as they include interviews with the Veteran, a review of the Veteran's claims file, and full examinations addressing the relevant rating criteria. Moreover, he has not alleged that his disability have worsened in severity since the January 2014 VA examination. See Palczewski v. Nicholson, 21 Vet. App. 174 (2007) (the passage of time alone, without an allegation of worsening, does not warrant a new examination). Therefore, the Board finds that the examinations of record are adequate to adjudicate the Veteran's claims.

Additionally, in September 2014, the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, the Court held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010).

Here, during the September 2014 hearing, the undersigned Veterans Law Judge enumerated the issues on appeal. Information was solicited regarding the current nature and severity of the Veteran's left muscle injury, as well as the nature and severity of his scars. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. Id. at 497. As such, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. 3.103(c)(2) , and that Board hearing was legally sufficient.

In November 2014, the Board remanded the Veteran's claims for additional development to include a request that the Veteran identify additional relevant private or VA treatment records and a request for VA records from November 2013 forward. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). The identified VA records were obtained and associated with the claims file and, in November 2014, a letter was sent to the Veteran giving him the opportunity to identify any additional evidence. Thereafter, the issue decided herein was readjudicated in a January 2015 supplemental statement of the case. Therefore, the Board finds that the AOJ substantially complied with the November 2014 remand orders. 

Significantly, neither the Veteran nor his representative have identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

II. Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

A veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). In Fenderson v. West, 12 Vet. App. 119 (1999), it was held that evidence to be considered in the appeal of an initial assignment of a rating disability was not limited to that reflecting the then current severity of the disorder. Compare Francisco v. Brown, 7 Vet. App. 55, 58 (1994) (where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern). 

Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007). The following analysis is therefore undertaken with the possibility that "staged rating" (assignment of different ratings may be warranted for distinct periods of time, based on the facts found) may be warranted.

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under 
§ 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id.

However, caution must be taken not to conflate the criteria in 38 C.F.R. § 3.321(b) with the criteria for a total disability rating based on individual unemployability (TDIU) in 38 C.F.R. § 4.16(b) . The Court has recognized that "the effect of a service-connected disability appears to be measured differently for purposes of extraschedular consideration under 38 C.F.R. § 3.321(b)(1) and for purposes of a TDIU claim under 38 C.F.R. § 4.16." Kellar v. Brown, 6 Vet. App. 157, 162 (1994). While the former requires marked interference with employment, the latter requires evidence of unemployability. Id.; see also Thun v. Peake, 22 Vet. App. at 117 (extraschedular consideration under § 3.321 may be warranted for disability that present a loss of earning capacity that is less severe than total unemployability).

A. Left Forearm Muscle Injury

The Veteran's left forearm muscle injury is currently rated under 38 C.F.R. § 4.73, Schedule of Ratings-Muscle Injuries, Diagnostic Code 5307, Group VII. As noted in the introduction. The Veteran was granted service connection in August 1955, and assigned a 10 percent rating. By a rating decision of May 2014, a 20 percent rating was granted, effective from January 2, 2014. Via a January 2015 rating decision, an increased evaluation of 30 percent was granted for the left forearm muscle injury, effective October 27, 2008, the date the Veteran filed his claim. 

Under Diagnostic Code 5307, the muscles in Group VII affect the flexion of the wrist and fingers. They are the muscles that arise from the internal condyle of humerus, and include the flexors of the carpus, the long flexors of the fingers and thumb, and the pronator. The Diagnostic Code assigns different ratings based on whether the injury to the muscle group is in the dominant or non-dominant extremity.

During the January 2014 VA examination, the examiner indicated that the Veteran is right handed. Therefore, the Veteran's left forearm is his non-dominant extremity.

For the non-dominant extremity, a noncompensable rating is assigned for a muscle injury that is only considered slight. A 10 percent rating is assigned for a muscle injury which is considered moderate. A 20 percent rating is assigned for a muscle injury which is considered moderately severe. A 30 percent rating is assigned for a muscle injury which is considered severe. 38 C.F.R. § 4.73, Diagnostic Code 5307.

As noted in the introduction, in October 2008, the Veteran filed a claim for an increased rating. In May 2014, the RO increased the rating to 20 percent, effective January 2, 2014, the date of the VA examination. In January 2015, the RO increased the Veteran's rating to 30 percent, effective October 27, 2008, the date of the Veteran's claim. Thus, he is in receipt of the highest possible rating for his service-connected left forearm muscle for the entire appeal period. To date, the Veteran has not indicated disagreement with the January 2015 rating decision, including the effective date assigned.

While the Veteran is in receipt of the highest possible rating for the entire appeal period, still at issue is whether he is entitled to a higher rating for the disability on an extra-schedular basis under 38 C.F.R. § 3.321(b)(1). See Bagwell v. Brown, 9 Vet. App. 337 (1996).

To support his claim, the Veteran submitted a letter from his private physician, dated October 2008. The physician indicated that the Veteran's left forearm muscle injury was causing chronic pain, numbness, and tingling.

A January 2009 VA examination noted a moderate left forearm muscle injury. The examiner noted the following symptoms: loss of strength, weakness, easy fatigability, pain, impairment of coordination, and the inability to control movement well. The injury did not affect the functioning of the body, and did not affect the Veteran's normal work requirement. The Veteran also complained that it was hard to do things that required strength. The examiner found no impairment of muscle tone, no signs of lowered endurance or impaired coordination. The examiner noted objective evidence of the loss of full grasp in the left hand.

A January 2009 private treatment record noted a chronic level of marked dysfunction of the left hand and wrist. The physician indicated marked impairment in grasping, holding, range of motion, sensation, and the use of the hand, especially in the area of fourth and fifth digits. The physician also noted significant numbness. In December 2009, the Veteran reported continuing pain and stiffness in the fourth and fifth digits, as well as triggering in the third digit.

In February 2012, the Veteran complained of chronic left hand pain that had gotten worse over the years. The Veteran stated that he experienced some episodes of increased pain muscle spasms at night at the fourth and fifth digits.

In an August 2014 Electrodiagnostic Consult Report, residual weakness and mild to moderate atrophy were noted. The Veteran complained of "greater pain and electric 'jolts' in the [left] hand that may radiate up the forearm and/or into the fingers, ulnar and median distribution." See VA Electrodiagnostic Consult Report, August 2014. Numbness and weak grip was confirmed during the examination.

In September 2014, the Veteran was seen at the American Lake VA Medical Center. The Veteran complained of residual pain with extension of his fingers, especially the fourth and fifth digits. He also complained of weakness of grip and forearm function. The Veteran indicated that he has trouble with many common activities, include performing daily household activities. The examiner noted muscle atrophy, decreased grip strength, and pain with extension. The examiner also found "some sensory changes in the area of the lateral antebrachial cutaneous nerve," as well as "extensive numbness in the sensory distribution of the median and ulnar nerves of the left hand." See Primary Care Progress Note, September 30, 2014.

During the September 2014 hearing before the undersigned, the Veteran described problems gripping and holding glasses, and stated that he did not have any strength in his left arm. He also said that he could not open jars with his left hand. The Veteran also stated that he suffered from great pain and that he had trouble lifting things. The Veteran and his wife also indicated numbness of the fourth and fifth digits.

With regard to the Veteran's left forearm muscle injury, the Board finds that the applicable schedular criteria are adequate to rate his disability at all points pertinent to this appeal. The rating schedule fully contemplates the described symptomatology, and bases the rating on the type of injury, treatment, clinical finding, and functional impairment which in this case is largely attributable to loss of strength, muscle atrophy, and muscle spasms in the arm. These symptoms are adequately addressed with the current severe rating associated with the non-dominant arm. Additionally, the Veteran is separately rated for upper left ulnar nerve neuropathy (electrical jolts and effects to the hand) and left forearm scarring, and the symptoms from these disorders are not for extraschedular consideration. 

Since there is no indication or argument that the applicable criteria are otherwise inadequate to rate the Veteran's left forearm muscle injury, referral for extra-schedular consideration is not appropriate. Furthermore, there is no evidence of record that would indicate that the Veteran's left forearm muscle caused an exceptional disability picture exhibiting "marked interference with employment" and "frequent periods of hospitalization." Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Thun v. Peake, supra; Bagwell, supra; Floyd v. Brown, 9 Vet. App. 88, 96 (1996).

B. Left Forearm Scarring

The Veteran's service-connected left forearm scarring has been rated under the Diagnostic Code for other effects of scars not evaluated under Diagnostic Codes 7801-7804, to include limitation of function of the affected part. 38 C.F.R. § 4.118, Diagnostic Code 7805. The RO denied a compensable rating because the Veteran's left forearm scarring was not shown to be painful or unstable.

Scars other than those on the face, head, or neck warrant a 10 percent rating for deep, nonlinear scars that cover areas greater than 6 square inches (39 square centimeters (cm)) but less than 12 square inches (77 square cm). A 20 percent rating is warranted if the area is greater than 12 square inches but less than 72 square inches. A deep scar is one associated with underlying tissue damage. 38 C.F.R. § 4.118, Diagnostic Code 7801. 

A 10 percent rating is warranted for a superficial and nonlinear scar if the area is 144 square inches (929 square cm) or larger. 38 C.F.R. § 4.118, Diagnostic Code 7802. 

A 10 percent rating is also warranted for one or two scars that are unstable or painful. Higher ratings are warranted for more than two such scars. An unstable scar is one where, for any reason, there is frequent loss of covering over the skin. 38 C.F.R. § 4.118, Diagnostic Code 7804. 

In a January 2009, the Veteran was given a VA examination to assess the current nature and severity of his left forearm muscle injury. The examiner noted the presence of a level scar at the left volar distal measuring 2 cm by .2 cm. The examiner found no tenderness, disfigurement, ulceration, adherence, instability, tissue loss, inflammation, edema, keloid formation, hypopigmentation, hyperpigmentation, abnormal structure, or limitation of motion.

In January 2014, the Veteran underwent another VA examination to evaluate his left forearm injury, left ulnar nerve neuropathy, and left forearm scarring. The examiner indicated that there were two scars on the left ulnar distal forearm measuring 2 cm by .2 cm. The scars were found to be minimal, and found not to be painful, unstable, or greater than 39 square cm. The examiner also noted that there were no other pertinent physical findings, complications, conditions, signs, or symptoms associated with the left forearm scarring.

The evidence of record does not support an initial compensable rating. While the Veteran reported during his hearing before the undersigned that his scars have cause him pain, both VA examinations contradict his statements in that they found that the scars were not painful on objective examination. Furthermore, the Veteran's VA treatment records do not contain any complaints of pain associated with his left arm scarring; treatment records show only complaints of left forearm muscle pain, as well as complaints of pain radiating down his arm, causing weakness and numbness, which are evaluated by the separate ratings assigned. Moreover, the scars were not found to be unstable and the Veteran has not subjectively reported such symptoms.

As such, the record does not indicate that the Veteran's left forearm scarring is painful or unstable and, accordingly, a compensable rating is not appropriate.

The Board has also considered whether a higher or separate rating is warranted under the other applicable diagnostic codes cited above. However, the scars do not cover an area of 6 square inches (39 square cm) or greater, and hence do not warrant a rating under 7801. Additionally, while the Veteran's scars were found to be superficial, they was also noted as being linear, and do not impact an area of 144 square inches (929 square cm) or greater, and hence do not warrant a rating under 7802. Finally, there is no indication that the scars impose any loss of function or interfere with activities.

Referral for an extra-schedular rating is also not appropriate because the rating criteria fully contemplate the appearance, character, and level of impairment, including pain and restriction of motion, caused by the Veteran's left arm scarring, of which the latter two are not present. Since there is no evidence to suggest that the Veteran's scarring presents an unusual or exceptional disability picture not contemplated Ratings Schedule, referral for extra-schedular consideration is not warranted.

C. Upper Left Ulnar Nerve Neuropathy

As mentioned in the introduction, the Veteran was granted service connection for upper left ulnar nerve neuropathy, and assigned a 20 percent rating, effective January 14, 2014. 38 C.F.R. § 4.124a, Diagnostic Code 8516. The RO noted that the effective date was based on when his ulnar nerve condition first manifested to a compensable degree. The Board notes that the Veteran has not entered a Notice of Disagreement to the January 2015 rating decision.

Under Diagnostic Code 8516 paralysis of the ulnar nerve, incomplete paralysis of the ulnar nerve for either arm warrants a 10 percent evaluation when mild, a 20 percent evaluation when moderate in the minor arm, and a 30 percent evaluation when severe for the minor arm. Complete paralysis of the ulnar nerve warrants a 50 percent evaluation for the minor arm where there is complete paralysis, with "griffin claw" deformity due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers cannot spread the fingers (or reverse), cannot adduct the theum; flexion of wrist weakened.

Under 38 C.F.R. § 4.124a, the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, at most, the moderate degree. The ratings for peripheral nerves are for unilateral involvement; when bilateral, combine with application of the bilateral factor.

As noted above, the Veteran is right handed. Therefore, the Veteran's left forearm is his non-dominant extremity.

In January 2014, the Veteran was given a VA examination to address the nature and severity of his left ulnar nerve neuropathy. With regard to the symptoms attributable to his disability, the examiner found only moderate paresthesias and/or dysesthesias, and moderate numbness. There was no indication of constant (excruciating) or intermittent (dull) pain. The examiner noted decreased sensitivity in the inner and outer forearm, as well as decreased sensitivity in the hands and fingers. The examiner concluded that the Veteran's disability represented only moderate incomplete paralysis of the left ulnar nerve. The examiner noted that his left ulnar nerve neuropathy impacted his ability to work was limited due to difficulties grasping and gripping objects.

In August 2014, the Veteran underwent an electrodiagnostic consultation. Upon examination, his adductor pollicis brevis, index extension, and pollicus brevis wrinkling were noted as normal. The examiner did note pain with resisted movement and weakness with little finger abduction. The examiner found decreased light-touch sensitivity over the left small and ring fingers. The examiner determined that there was no electrodiagnostic evidence of left ulnar neuropathy.

During his September 2014 hearing, the Veteran and his wife stated that he had problems with numbness. He stated that there are times when he cuts his left hand, but is nevertheless unaware that he has or that he is bleeding. He also indicated that he had problems with temperature sensitivity, stating that his left hand is cold and clammy all the time. He indicated that his condition worsened following a round of chemotherapy and radiation treatments for Stage 3 lymphoma. The Veteran also stated that he sometimes experiences a tingling sensation in his ring and little finger.

In September 2014, the Veteran was seen at the American Lake VA Medical Center. The examiner noted extensive numbness in the sensory distribution of the median and ulnar nerves of the left hand.

Based upon the evidence of record, to include the medical records and the Veteran's lay statements, the Board finds that the Veteran has severe paralysis of the left ulnar nerve. In this regard, the Board notes that, while the January 2014 VA examiner diagnosed him with only moderate left ulnar nerve neuropathy, and the August 2014 found only decreased light-touch sensitivity over the left small and ring fingers and pain, the treatment records show complaints of increased pain, as well as complaints of "electric jolts" through the arm. VA treatment records also note that he has a weakened grip, and that he has a reduced range of motion in all fingers that result in the inability to make a fist. Furthermore, at his September 2014 hearing, he stated that he had difficulties moving his fingers, and that, due to weakness, he was unable to open jars. Finally, as noted above, the Veteran and his wife indicated that there were many times that the Veteran has cut himself on something and was unaware that it occurred. Therefore, giving the Veteran the benefit of the doubt, and considering the Veteran and his wife's credible reports and the medical evidence of record, the Board the concludes that the Veteran's service-connected upper left ulnar nerve neuropathy associated with left forearm muscle injury is entitled to a rating of 30 percent.

The Board has also considered whether referral for extra-schedular consideration is warranted. In this regard, the Board finds that the symptoms associated with Veteran's upper left ulnar nerve neuropathy are fully contemplated by the current rating assigned. Specifically, such criteria contemplate the difficulty the Veteran has with limited and painful range of motion and neurological complaints, including numbness, weakness in lifting objects, tingling, and pain. Moreover, he has been assigned separate ratings for the injury to the left forearm muscle and for scars. Therefore, the Board finds that such manifestations of the Veteran's upper left ulnar nerve neuropathy are fully contemplated by the rating schedule.

Since the rating schedule is adequate to evaluate the Veteran's upper left ulnar nerve neuropathy, the Board need not proceed to consider the second factor, viz., whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Thun v. Peake, supra; Bagwell, supra; Floyd v. Brown, 9 Vet. App. 88, 96 (1996).

III. Other Considerations

The combined evaluation for each disability associated with the Veteran's left arm is 50 percent. The Board notes that consideration of entitlement to a higher rating is subject to 38 C.F.R. § 4.68 (i.e., the amputation rule) (the combined rating for disabilities of an extremity shall not exceed the rating for amputation of the extremity at the elective level, were amputation to be performed). Diagnostic Codes 5123-5125 provide the ratings for amputation of the forearm. If amputation were elected above the insertion of the pronator teres of the minor extremity, the maximum rating would be 70 percent. If amputation were elected below the pronator teres, or of the hand, the maximum rating would be 60. As there is no evidence that the Veteran's problems have manifested from the pronator teres, a 60 percent rating is the maximum available. However, as the Veteran's combined rating is only 50 percent, the amputation rule is not does not limit the award decided herein.

Further, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. 

However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

Finally, the Board acknowledges that, if the claimant or the record reasonably raises a question as to whether a veteran is unemployable due to the disability for which a higher rating is sought, then part and parcel to that claim for a higher rating is the matter of whether a total rating based on individual unemployability (TDIU) as a result of that disability is warranted. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this regard, there is no specific evidence or allegation that these disabilities alone, render the Veteran unable to secure or follow a substantially gainful occupation. As there is no suggestion of unemployability due solely to the service-connected disabilities on appeal, further consideration of a TDIU in connection with the higher rating claim on appeal is not warranted.


ORDER

1. Entitlement to a rating in excess of 30 percent for a left forearm muscle injury, to include on an extra-schedular basis, is denied.

2. Entitlement to an initial compensable rating for left forearm scarring with associated with left forearm muscle injury is denied.

3. Entitlement to a 30 percent rating for left ulnar nerve neuropathy associated with left forearm muscle injury is granted.



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs