**Harry L. KELLAR, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–1223.**

United States Court of Veterans Appeals.

Jan. 24, 1994.

Carl S. Pavetto, Syracuse, NY, was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Vito A. Clementi, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

IVERS, Judge:

Harry L. Kellar appeals a June 3, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased evaluation for chronic lumbosacral strain with nerve root irritation (currently rated as 40% disabling). *Harry L. Kellar,* BVA 92–13690 (June 3, 1992). The Secretary has filed a motion to dismiss, or alternatively, for sum-

mary affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court vacates the June 1992 decision of the BVA and remands the case for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

Appellant served on active duty in the United States Navy from August 18, 1959, to August 14, 1962, and from April 9, 1963, to January 10, 1968. R. at 16–17; *see* R. at 122, 126. On June 10, 1969, a VA regional office (RO) granted service connection for a meniscectomy of the right knee. R. at 123. Appellant applied for service connection for a back condition on several occasions. On August 4, 1980, pursuant to a BVA remand on one of those claims, the RO granted service connection for chronic lumbosacral strain with nerve root irritation secondary to his service-connected right knee condition and rated as 10% disabling. R. at 217–18. By a letter dated August 28, 1981, appellant sought an increased evaluation for his service-connected disabilities, including his lumbosacral strain condition. R. at 232–33. On October 28, 1981, the RO denied a claim for an increase in the 10% disability rating assigned to the lumbosacral strain condition. R. at 250.

On January 24, 1990, appellant sought an increase in the disability ratings for his service-connected disabilities. R. at 286. On July 11, 1990, the RO increased the rating for his service-connected lumbosacral strain condition to 40% disabling, but denied his claim for an increase in the 10% disability rating for his service-connected meniscectomy. R. at 341. On July 27, 1990, appellant filed a Notice of Disagreement regarding the 40% disability rating for the service-connected lumbosacral strain condition. R. at 342. On October 22, 1990, he filed a claim for a total disability rating based on individual unemployability (TDIU). R. at 354. On November 14, 1990, a hearing officer for the RO continued the denial of a disability rating above 40% for appellant's back condition. R. at 410. On February 22, 1991, appellant wrote to the RO that medical records indicat-

ing early urinary incontinence due to his service-connected condition warranted consideration of an increased evaluation based on neurological findings. R. at 427. A June 27, 1991, rating decision indicates that the RO continued its denial of an evaluation above 40% for appellant's low back condition. R. at 449. On June 3, 1992, the Board denied an increased evaluation for chronic lumbosacral strain with nerve root irritation. *Kellar*, BVA 92–13690, at 8. The Board also returned to the agency of original jurisdiction (AOJ) appellant's claims for service connection for urinary incontinence as secondary to a back disability and for a TDIU rating. *Id.* at 2.

## II. ANALYSIS

■ The Court notes that the Board did not err in returning the claims for service connection for urinary incontinence and TDIU. *See Bernard v. Brown*, 4 Vet.App. 384, 393–94 (1993) (not inappropriate for Board to remand case to AOJ for further development of issues that have not previously been considered). Therefore, these claims are not before the Court at this time.

■ In his motion to dismiss, the Secretary argues that appellant's claim for an increased evaluation for his service-connected chronic lumbosacral strain is inextricably intertwined with his claim for secondary service connection for urinary incontinence and should therefore be dismissed because the urinary incontinence claim is still pending at the AOJ. In *Harris v. Derwinski*, 1 Vet. App. 180, 183 (1991), the Court dismissed an appeal of the Board's denial of an increased rating for service-connected anxiety neurosis where the claim was "inextricably intertwined" with a claim for service connection for a heart disorder which the Board had referred back to the AOJ. In that case, the Court stated:

A decision by the RO to grant appellant's referred heart disorder claim could have a significant impact upon appellant's claims for an increased rating for anxiety neurosis. This, in turn, could render any review by this Court of the decision on the anxiety neurosis claim meaningless and a waste of judicial resources.

*Ibid.; see also Hoyer v. Derwinski*, 1 Vet. App. 208, 210 (1991). In the case presently on appeal, however, disposition of appellant's claim for service connection for urinary incontinence is not so "inextricably intertwined" with his claim for an increased evaluation for chronic lumbosacral strain. The urinary incontinence condition may be rated under a separate code from the Schedule for Rating Disabilities. In addition, the disability rating for appellant's lumbosacral spine condition, regardless of the diagnostic code (DC) under which it is rated, does not vary based on service connection for urinary incontinence. *See* 38 C.F.R. § 4.71a, DCs 5292, 5293, 5295 (1993). Therefore, the Court will deny the Secretary's motion to dismiss the instant appeal.

■ Appellant's claim for an increased evaluation for his service-connected chronic lumbosacral strain with nerve root irritation is a new claim, and the Court reviews the Board's findings of fact regarding new claims under a "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Butts v. Brown*, 5 Vet.App. 532, 535 (1993); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990) (determination of degree of impairment is question of fact). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert, supra.*

Appellant's service-connected chronic lumbosacral condition is currently rated under the DCs for limitation of motion of the lumbar spine and lumbosacral strain. 38 C.F.R. § 4.71a, DCs 5292, 5295. The maximum allowable disability rating under either DC is 40%.

■ Appellant argues that the Board failed to consider adequately the issue of pain. The Board, however, reviewed the medical records referring to pain and found that the severely disabling rating currently assigned to the condition encompassed the appellant's pain. *Kellar*, BVA 92–13690, at 7.

The Court holds that the Board discussed appellant's pain and provided adequate reasons or bases for its findings on that issue.

█ In an effort to obtain a higher disability rating, appellant argues that his condition should be rated under the DC for intervertebral disc syndrome. In a July 18, 1991, letter, a neurologist noted that, on examination of appellant, that there was "[n]o objective evidence of lumbosacral radiculopathy or myelopathy." R. at 454. ("Radiculopathy" is defined as "any pathological condition of the nerve roots." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1405 (27th ed. 1988) [hereinafter DORLAND'S]. "Myelopathy" is defined as "a general term denoting functional disturbances and/or pathological changes in the spinal cord." *Id.* at 1088.) By contrast, the 60% disability rating (i.e., the next higher) evaluation under the DC for intervertebral disc syndrome condition requires that the condition be "[p]ronounced[,] with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent muscle jerk, or other neurological findings appropriate to site of diseased disc, little intermittent relief." 38 C.F.R. § 4.71a, DC 5293. "Neuropathy" is defined as "a general term denoting functional disturbances and/or pathological changes in the peripheral nervous system." DORLAND'S at 1131. The July 1991 letter refutes the contention that appellant suffers from intervertebral disc syndrome. Appellant also concedes in his brief that his condition does not satisfy all the requirements listed under DC 5293. Appellant's Br. at 10. Therefore, DC 5293 is not relevant to appellant's claim. The Court thus holds that the BVA's finding that DC 5293 is not applicable is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C.A. § 7261(a)(3)(A) (West 1991); *see Butts,* 5 Vet.App. at 539.

█ Insofar as appellant's argument that the schedule for rating disabilities does not adequately reflect the severity of his condition, the Court is precluded from directly reviewing that schedule. *See* 38 U.S.C.A. § 7252(b) (West 1991); *see also* 38 U.S.C.A. § 1155 (West 1991); *Butts,* 5 Vet.App. at 539 ("Congress delegated to the Secretary in the first and final instance the authority to adopt a schedule for rating disabilities.").

█ Nevertheless, the Court holds that a remand is warranted in this situation. On numerous occasions, appellant sought extra-schedular consideration of his claim for an increase. Under 38 C.F.R. § 3.321(b)(1) (1993), the VA's Chief Benefits Director or the Director of the Compensation and Pension Service is authorized to approve

an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

The record contains statements by appellant that his back condition has interfered with his employment (R. at 371–73), as well as a physician's letter and VA progress notes indicating that appellant is totally disabled as a result of his multiple (service-connected and non-service-connected) conditions (R. at 438, 441). The Board's decision, however, does not make the requisite findings of fact or give reasons or bases for its decision that referral to the appropriate VA officials under 38 C.F.R. § 3.321(b)(1) was not warranted. *See Fanning v. Brown,* 4 Vet.App. 225, 229 (1993) (Court remanded TDIU claim for BVA to provide reasons or bases where BVA had not given extraschedular consideration to the claim); *Fisher v. Principi,* 4 Vet.App. 57, 60 (1993) (Court remanded TDIU claim where BVA decision did not make requisite findings of fact or provide reasons or bases for its decision regarding extraschedular consideration of claim); *Moyer v. Derwinski,* 2 Vet. App. 289, 293–94 (1992) (Court remanded for BVA to give reasons or bases regarding potential applicability of 38 C.F.R. § 3.321(b)(1)). Therefore, the Court remands to the Board for the requisite findings of fact and for sufficient reasons or bases on the issue of whether referral of the extra-schedular consideration issue is indicated.

■ The Court notes that the effect of a service-connected disability appears to be measured differently for purposes of extraschedular consideration under 38 C.F.R. § 3.321(b)(1) (extraschedular consideration warranted where there is, *inter alia, marked interference with employment*) and for purposes of a TDIU claim under 38 C.F.R. § 4.16 (1993) (extraschedular consideration warranted where veteran who is *unemployable* by reason of service-connected disabilities that do not meet certain percentage requirements is *"unable to secure and follow a substantially gainful occupation* by reason" of such service-connected disabilities) (emphasis added); *see also* 38 C.F.R. § 3.321(b)(2) (1993) (extraschedular consideration warranted in pension cases where veteran "is found to be *unemployable* ") (emphasis added); *cf. Moyer,* 2 Vet.App. at 293–94 (discussing issue of extraschedular consideration under 38 C.F.R. § 3.321(b)(1) separately from issue of TDIU claim). Therefore, appellant's claim for extraschedular consideration of his service-connected condition is not inextricably intertwined with the TDIU claim which has been referred to the AOJ. *See Hoyer,* 1 Vet.App. at 210; *Harris,* 1 Vet.App. at 183.

■ The Board also failed to adjudicate a claim for non-service-connected pension under 38 C.F.R. § 4.17 (1993). Since appellant had service during a period of war, *see* 38 U.S.C.A. § 101(11), (29), § 1521(a) (West 1991), his claim for an increase in the disability rating for his service-connected condition also presented a claim for non-service-connected pension. *See* 38 C.F.R. § 3.151(a) (1993) ("claim . . . for compensation may be considered to be a claim for pension"); *see also Waddell v. Brown,* 5 Vet.App. 454, 457 (1993). Pursuant to 38 C.F.R. § 20.202 (1993), the Board must construe arguments raised in a substantive appeal in a liberal manner to determine whether they raise issues on appeal. *See Myers v. Derwinski,* 1 Vet.App. 127, 129–30 (1991); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (VA must liberally read all documents or oral testimony submitted prior to the BVA decision to include all issues presented); *see also Waddell,* 5 Vet.App. at 457 (BVA may not disregard a claim for benefits presented on the record).

The Court, therefore, remands the pension claim to the Board for compliance with the statutory duty to assist in accordance with 38 U.S.C.A. § 5107(a) (West 1991) and 38 C.F.R. § 3.159 (1993).

### III. CONCLUSION

Accordingly, upon consideration of the record, the Secretary's motion for summary affirmance, and appellant's pleadings, the Court denies the Secretary's motion to dismiss or, in the alternative, for summary affirmance, VACATES the June 1992 decision of the BVA, and REMANDS the case for readjudication consistent with this opinion.