Citation Nr: 1602935 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 08-38 839 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to a total disability evaluation based on a service-connected disability (TDIU) prior to May 8, 2013, to include on an extraschedular basis. 


REPRESENTATION

Veteran represented by: Georgia Department of Veterans Services


WITNESSES AT HEARING ON APPEAL

Veteran and spouse


ATTORNEY FOR THE BOARD

Journet Shaw, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1972 to September 1975.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2013 rating decision by the Appeals Management Center (AMC), on behalf of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.

The Veteran and his wife testified before the undersigned Veterans Law Judge at a July 2012 Travel Board hearing. A transcript of this hearing is of record.

The Board has previously remanded the issue on appeal for additional development in January 2013 and September 2013. As the actions specified in the remands have been completed, the matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). 


FINDING OF FACT

From September 9, 2010 to May 7, 2013, and resolving all reasonable doubt in favor of the Veteran, the evidence demonstrates that the Veteran's service-connected disability precludes him from securing or following substantially gainful employment. 


CONCLUSION OF LAW

From September 9, 2010 to May 7, 2013, the criteria for an extraschedular TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16(b) (2015).



REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Given the Board's favorable decision in granting a TDIU for the period from September 9, 2010 to May 7, 2013, the Board finds that all notification and development actions needed to fairly adjudicate the appeal have been accomplished.

TDIU 

The Veteran contends that his service-connected lumbar spine disability prevents him from securing or following substantially gainful employment. As of September 9, 2010, the Veteran was unable to continue working as a crane technician, a position he had held for 15 years with the same employer. He explained that he had actually been unable to work since 2007, but his employer had made accommodations to allow him to continue working. When the Veteran said that he fell off of a crane at work after his back went out and he lost his balance, he decided it was time to stop working. See December 2011 Work Report History and April 2012 VA Form 21-8940. 

Total disability means that there is present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.15. A substantially gainful occupation has been defined as "employment at which non-disabled individuals earn their livelihood with earnings comparable to the particular occupation in the community where the Veteran resides." M21-1 VA Adjudication Procedure Manual, Part IV.ii.2.F.1.c. (Updated September 24, 2015). It also has been defined as "an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income." Faust v. West, 13 Vet. App. 342 (2000). Marginal employment shall not be considered substantially gainful employment. Substantially gainful employment is defined as work that is more than marginal, which permits the individual to earn a "living wage." Id. Marginal employment is defined as an amount of earned annual income that does not exceed the poverty threshold determined by the Census Bureau. 38 C.F.R. § 4.16(a).

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For the purpose of one 60 percent or one 40 percent disability in combination, disabilities of one or both upper extremities, or one or both lower extremities, including the bilateral factor, if applicable, disabilities resulting from a common etiology or a single accident, or disabilities affecting a single body system will be considered as one disability. 38 C.F.R. § 4.16(a).

In this case, the Veteran was granted a TDIU on a schedular basis as of May 8, 2013, as the Veteran's service-connected disabilities have a combined evaluation of 70 percent for degenerative joint disease (DJD), degenerative disc disease (DDD), and spinal stenosis of the lumbar spine as 40 percent disabling; radiculopathy of the left lower extremity associated with DJD, DDD, and spinal stenosis of the lumbar spine as 40 percent disabling; and radiculopathy of the right lower extremity associated with DJD, DDD, and spinal stenosis of the lumbar spine as 20 percent disabling. 

However, prior to May 8, 2013, the Veteran has one service-connected disability, DJD, DJD, and spinal stenosis of the lumbar spine, evaluated as 40 percent disabling. Thus, the Veteran does not satisfy the schedular requirements for a TDIU during the appeal period. However, it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). Therefore, if a veteran fails to meet the rating enunciated in 38 C.F.R. § 4.16(a), as here, an extraschedular rating is for consideration where a veteran is unemployable due to service-connected disability. 38 C.F.R. § 4.16(b).

The Board is prohibited from assigning a TDIU on the basis of 38 C.F.R. § 4.16(b) in the first instance without ensuring that the claim was referred to VA's Director of Compensation for consideration of an extraschedular rating under 38 C.F.R. § 4.16(b). Bowling v. Principi, 15 Vet. App. 1 (2001). Accordingly, in September 2013, the Board remanded the claim for initial extraschedular consideration. In May 2014, the Director of Compensation Service determined that a TDIU on an extraschedular basis was not warranted. 

After a referral has been made and the Director of the Compensation Service has made a determination regarding entitlement to an extraschedular rating, the Board has jurisdiction to review that determination on a de novo basis. See Anderson v. Shinseki, 22 Vet. App. 423 (2009).

The Board notes that entitlement to a TDIU extraschedular rating under 38 C.F.R. § 4.16(b), and an extraschedular rating under 38 C.F.R. § 3.321(b)(1), although similar, are based on different factors. See Kellar v. Brown, 6 Vet. App. 157 (1994). An extraschedular rating under 38 C.F.R. § 3.321(b)(1) is based on the fact that the schedular ratings are inadequate to compensate for the average impairment of earning capacity due to the Veteran's disabilities. Exceptional or unusual circumstances, such as frequent hospitalization or marked interference with employment, are required. In contrast, 38 C.F.R. § 4.16(b) merely requires a determination that a particular Veteran is rendered unable to secure or follow a substantially gainful occupation by reason of his or her service-connected disabilities. See VAOPGCPREC 6-96.

In this regard, the Board notes that, for a Veteran to prevail on a claim for TDIU on an extraschedular basis, it is necessary that the record reflect some factor which places the case in a different category than other Veterans with an equal rating of disability. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). The pertinent question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. Id. This is so because a disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. Id. 

The Board notes that the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. See Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). Thus, the VA examiners' conclusions are not dispositive. However, the observations of the examiners regarding functional impairment due to the service-connected disability go to the question of physical or mental limitations that may impact his ability to obtain and maintain employment.

For the period prior to May 8, 2013, the Board finds that the following evidence is the most probative evidence as to the question of whether a TDIU, on an extraschedular basis, is warranted. In particular, the Board places weight upon the following: (1) a January 2006 statement from the Veteran's employer that his position as lead crane technician required him to perform moderate to heavy lifting, climb ladders and scaffolding to access overhead crane and hoist, spend 10 to 12 hours on a crane to repair it, climb on and under hydraulic truck cranes, and perform other activities requiring bending and crawling; (2) reports during a November 2009 VA examination that the Veteran had lumbar spine pain radiating down his bilateral legs; he had flare-ups precipitated by turning, bending, reaching down, climbing steps, walking, and standing; he used a cane for ambulation; he experienced incapacitating episodes; and he had lost three months of time at work due to his low back pain; (3) a November 2010 VA Form 21-8940 that the Veteran had completed three years of high school, had no other training or education, except for continual certification training for crane repair technicians, and had worked for his last employer from 1995 to 2010 until he became too disabled to work; (4) a February 2011 VA examiner's opinion that the Veteran's stenosis of the lumbar spine would make it "highly improbable" that he would be able to maintain successful employment, as he had a debilitating disease, which contributed to mechanical back pain and caused paresthesias, numbness, and weakness; (5) findings in a June 2011 VA examination report that the Veteran required a cane and wheelchair due to his lumbar spine, and that due to his pain, he was unable to take a shower, vacuum, drive a car, cook, climb stairs, dress himself, put on and tie his shoes, take out the trash, shop, perform gardening activities, or push a lawn mower; (6) a June 2011 VA examiner's conclusion that the Veteran had difficulty with prolonged ambulation, standing, sitting, lifting, and carrying objects, performing arduous physical activities, bending, and stooping, which would severely impact his ability to perform physical activities of employment and moderately affect his ability to perform sedentary activities of employment; (7) a June 2011 statement describing three incidents where the Veteran had fallen due to his back having given out, including one incident at work, where he reportedly fell while climbing a crane to perform an inspection; (8) testimony, during the July 2012 Board hearing, that the Veteran was using a wheelchair because of his loss of range of motion and pain, that he used his cane in the house, and that he could not stand up straight, finding relief only with leaning forward; and (9) a January 2013 Social Security Disability Determination, which found him disabled as of September 9, 2010 due to disorders of the back (discogenic and degenerative). 

Based on a careful review of the evidence related to the Veteran's service-connected disability and its functional effects, and resolving all reasonable doubt in favor of the Veteran, the Board finds that, as of September 9, 2010, the last date of his employment, the Veteran is precluded from securing and following substantially gainful employment due to the effects of his lumbar spine disability. The Board finds that the evidence, including the Veteran's competent and credible statements, supports that he would be unable to perform physical labor or sedentary work, due to the constant pain in his back radiating into his lower extremities. Furthermore, the evidence shows that the Veteran did not complete high school, had exclusive work experience as a crane technician, and a documented inability to perform the physical activities which were required of a job in the only field for which he had training. Therefore, the Board concludes that from September 9, 2010 to May 7, 2013, a TDIU, on an extraschedular basis, is warranted. 



ORDER

From September 9, 2010 to May 7, 2013, entitlement to a TDIU, on an extraschedular basis, is granted. 




____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs