Citation Nr: 1714074 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 12-29 624 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for a lumbar spine disability on an extraschedular basis.

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

C. Ford, Associate Counsel



INTRODUCTION

The Veteran served a verified period of active duty in the United States Army from March 1979 until December 1983.

This appeal arises before the Board of Veterans' Appeals (Board) from an April 2012 rating decision in which the Department of Veteran Affairs (VA) Waco, Texas, Regional Office (RO), in part, continued the 10 percent rating evaluation for arthritis of the lumbar spine and denied service connection for hearing loss. 

In December 2013, the Board remanded the issues for further development. In February 2015, the Board determined that the issue of entitlement to a TDIU was raised by the record. See Rice v. Shinseki, 22 Vet. App. 447, 456 (2009). The Board continued the schedular rating of the lumbar spine disability and remanded the claims of entitlement to service connection for bilateral hearing loss, extraschedular rating of the lumbar spine disability and TDIU for further development. In May 2016, the Board granted service connection for bilateral hearing loss, and remanded for extraschedular consideration for a lumbar spine disability and TDIU. 


FINDINGS OF FACT

1. The Veteran's lumbar spine disability does not present such an exceptional or unusual disability picture as to render the regular schedular standards inadequate.

2. The Veteran does not have a single service-connected disability rated at least 60 percent disabling, nor a combined rating of at least 70 percent with a single service-connected disability rating of at least 40 percent, and the evidence of record does not show functional impairment so severe that the Veteran cannot find and follow substantially gainful employment.



CONCLUSIONS OF LAW

1. The criteria for an extraschedular rating for a lumbar spine disability have not been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.71a, Diagnostic Code 5010-5242 (2016).

2. The criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.15, 4.16, 4.19, 4.25 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VETERANS CLAIMS ASSISTANCE ACT OF 2000 (VCAA)

The Board finds that no further notice or development action is necessary in order to satisfy VA's duties to the Veteran under the VCAA. Under 38 U.S.C.A. § 5102, 5103A and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

The VA's duty to notify was satisfied by letter on May 2011. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

VA has satisfied its duty pursuant to 38 U.S.C.A § 5103A (West 2014) and 38 C.F.R. § 3.159(c) (2016) to assist the Veteran. Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim. The VA has fulfilled its duty to obtain all government records and assist the Veteran in identifying and obtaining all relevant records to support this claim. The RO associated the VA treatment records, service treatment records, private treatment records and VA examination reports with the claims file.

In further fulfilling the duty to assist, the Veteran was afforded VA examinations in connection with his claim in May 2011, February 2014 and March 2015. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). (holding that once VA undertakes to provide a medical examination or opinion, it must ensure that the examination or opinion is adequate). The Board notes that medical opinions are regarded as more probative when they include clear conclusions and supporting data with a reasoned analysis connecting the data and the conclusions. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Moreover, the examiner should clearly and rationally consider all procurable and assembled evidence in arriving at a conclusion. Jones v. Shinseki, 23 Vet. App. 382, 390 (2010). The Board found these examinations to be adequate in adjudicating the Veteran's claim. The examiners offered definitive conclusions based in rationale. The examiners gave conclusive opinions regarding the severity and extent of the Veteran's service-connected disabilities on his functionality. These examinations have been found to be adequate, and thus, have met the requirements to satisfy the duty to assist.

The Board notes that the May 2016 Board remand included requests to obtain additional treatment records and develop a claim for a TDIU. In June 2016, VA sent the Veteran a VA Form 21-8940 in connection with the inferred claim for entitlement to a TDIU. However, the Veteran did not respond to this letter and has, to date, not submitted the requested VA Form 21-8940. The Board notes that the Veteran has a duty to cooperate in the development of his claim. See Wood v. Derwinski, 1 Vet. App. 191 (1991) (noting that "the duty to assist is not always a one-way street. If a Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence."); see Hayes v. Brown, 5 Vet. App. 60, 68 (1993). In this case, the information that would have been provided on a completed VA Form 21-8940 would have been relevant to the claims for an increased rating and entitlement to a TDIU, but the Veteran did not provide the required information. Thus, the Board finds that the lack of this information is not due to any inaction by the Board or the AOJ. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

For all the foregoing reasons, the Board concludes that VA's duties to the Veteran have been fulfilled with respect to the issues on appeal.


II. EXTRASCHEDULAR CONSIDERATION

The Veteran's schedular determination for his service-connected lumbar spine disability is based on application of provisions of the VA's Schedule for Rating Disabilities. See 38 C.F.R. Part 4 (2016). However, the regulations also provide for exceptional cases involving compensation. Pursuant to 38 C.F.R. § 3.321(b)(1) (2016), the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service is authorized to approve an extraschedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1) (2016). 

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether the Veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate the Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the C&P Director to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

In February 2015, the Board continued a 10 percent schedular rating for the Veteran's lumbar spine disability pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5242 (2016). With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular criteria for the service-connected lumbar spine disability are inadequate. The rating criteria reasonably describes the Veteran's disability level and symptomatology, and provide for a higher rating for additional or more severe symptomatology than is shown by the evidence. The rating assigned contemplates the impairments of the Veteran's lumbar spine disability.

The Board further observes that, even if the available schedular ratings for the lumbar spine disability did not contemplate the symptoms present in this case, the Veteran does not exhibit other related factors such as those provided by the regulation as "governing norms." The record does not show that the Veteran has required frequent hospitalizations for his lumbar spine disability. The record is absent for any evidence that, due to his spine disability, the Veteran has required surgical intervention, emergency care, admission on an inpatient basis, or any other course of treatment beyond conservative measures. There is also no evidence that the Veteran's lumbar spine disability causes marked interference with employment. As such, the disability picture is contemplated by the Rating Schedule, and the assigned schedular rating is therefore adequate. Consequently, referral for extraschedular consideration is not required under 38 C.F.R. § 3.321 (b)(1).

Pursuant to Johnson v. McDonald, 762 F.3d 1362 (2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all of the service-connected disabilities experienced. After applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), the Board finds that there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.


III. TDIU CLAIM

The Veteran has contended that his service-connected disabilities are responsible for his current unemployment. Entitlement to TDIU is a potential element of all increased rating claims, and the Veteran's contentions raise that issue in this case. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Thus, the issue is properly before the Board. See Jarrell v. Nicholson, 20 Vet. App. 326 (2006).

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (2016). A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340(a)(1), 4.15 (2016).

Marginal employment is not considered substantially gainful employment. 38 C.F.R. § 4.16(a). Substantially gainful employment means, essentially, that the work provides income above the poverty level established by the United States Department of Commerce, without benefit of protected family employment or a sheltered workshop. 38 C.F.R. § 4.16(a).

A TDIU may be assigned where the schedular rating is less than total when the claimant is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). For the purpose of one 60 percent disability or one 40 percent disability, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16 (a)(2) (2016).

For the Veteran to prevail on a claim for a TDIU, the sole fact that the Veteran is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. See Van Hoose v. Brown, 4 Vet. App. 361 (1993). In determining whether the Veteran is entitled to a TDIU, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to his or her age or the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

An extraschedular total rating based on individual unemployability may be assigned in the case of a Veteran who fails to meet the percentage requirements, but who is unemployable by reason of service-connected disability. 38 C.F.R. §§ 3.321, 4.16(b). The United States Court of Appeals for Veterans Claims (Court) has recognized that, "the effect of a service-connected disability appears to be measured differently for purposes of extra-schedular consideration under 38 C.F.R. § 3.321 (b)(1) ... [than] for purposes of a TDIU claim under 38 C.F.R. § 4.16." Kellar v. Brown, 6 Vet. App. 157, 162 (1994). While the former regulatory provision requires marked interference with employment, the latter requires evidence of unemployability. Id. 

The Veteran contends that he is unable to secure gainfully substantial work due to his service-connected disabilities. The evidence of record shows that the Veteran is a high school graduate. While in the Army, the Veteran served as a recovery specialist for tank and gunfire. The Veteran was honorably discharged due to physical disability which prevented him from continuing active service.

The Veteran was service-connected for the following: deep peroneal nerve palsy of the left lower extremity, evaluated as 20 percent disabling, effective 12/06/1983; deep peroneal nerve palsy of the right lower extremity, evaluated as 10 percent disabling, effective 12/06/1983; degenerative joint disease of the lumbar spine, evaluated at 10 percent, effective 01/22/2009; tinnitus associated with bilateral hearing loss, evaluated at 10 percent disabling, effective 01/12/2011; hiatal hernia with reflux esophagitis, evaluated at 0 percent disabling, effective 12/06/1983; and bilateral hearing loss, evaluated at 0 percent disabling, effective 01/12/2011.

The Veteran's combined rating was 30 percent from December 6, 1983 to January 22, 2009 and 40 percent from January 22, 2009 thereafter. 38 C.F.R. § 4.25 (2016). Thus, the Veteran does not meet the percentage requirements for TDIU under 38 C.F.R. § 4.16(a).

Although the Board is precluded from initially assigning an extraschedular rating, the Board may review the adjudication of an extraschedular rating once the Director of the Compensation and Pension Service determines that an extraschedular rating is not warranted. Anderson v. Shinseki, 22 Vet. App. 423 (2009); Floyd v. Brown, 9 Vet. App. 88 (1996).

The Board finds that the evidence of record is insufficient to show that the Veteran was unable to secure or follow a substantially gainful occupation because of his service-connected disabilities, such that a referral is warranted for consideration of an extraschedular rating. 

In an April 2009 VA examination, the Veteran reported that he has back spasms and pain that start when he stands up. He stated that he walks with a cane. The Veteran also stated he had low back pain for many years when he was in the service. The Veteran endorsed the statement that he was unemployed due to his service-connected disabilities. The VA examiner found that the Veteran was able to walk one-fourth of a mile and needed the aid of a cane. The examiner also reported that the Veteran's lumbar spine disability had mild effects on the Veteran's daily activities, such as chores, shopping, exercise, sports, and recreation. The examiner further reported that the Veteran's disability did not have impact on daily activities such as traveling, feeding, bathing, dressing, toileting, and grooming.

In a July 2009 mental health medical record, the Veteran reported that he has tried many different jobs since leaving the military. He reported that he could never stay at any one job.

In a December 2010 endocrine medical record, the Veteran reported that he was in military service from 1977 to 1983. He also reported that now he is in maintenance. The Veteran stated that he does some odd jobs but he says he is retired. He maintained that his back pain was the issue.

In a May 2011 VA lumbar spine examination, the Veteran reported he had been unemployed for more than twenty years. The Veteran also endorsed the statement that his unemployment is due to his service-connected issues. The examiner reported that the Veteran's peroneal nerve palsy of the bilateral lower extremities and lumbar spine disability may have the effect of pain on usual occupation and resulting work problem. The examiner did not specify what kind of occupational activities the Veteran would participate in that would manifest this impact. The examiner noted that neither the Veteran's peroneal nerve palsy disabilities nor lumbar spine disability had an impact on the Veteran's daily activities. 

In a May 2011 VA examination for the Veteran's hiatal hernia, the Veteran again indicated that he was unemployed dut to service-connected issues. However, the Veteran's hiatal hernia was found to be well-controlled, and the examiner found no effects on the Veteran's usual daily activities. 

In a November 2011 VA audiological examination, the Veteran reported that he did factory work prior to military service for 10 years. The examiner also noted that the Veteran worked on lawn equipment for seven years as recreation. The Veteran reported that his hearing loss had an impact on his daily life in that other people told him he doesn't hear well. The Veteran noted that he wasn't sure if he didn't hear well or if others talked low. The Veteran stated that his only problem was watching TV because he keeps turning it up and everyone else turns it down. The Veteran also reported tinnitus. The Veteran stated that the tinnitus had impact on his daily activities in that it bothers him, and he gets distracted sometimes when he doesn't hear anything. The Veteran went on to state he had to have noise so he can hear something. The VA examiner reported that, though the Veteran had sensorineural hearing loss, word recognition scores were excellent bilaterally. 

In a January 2014 VA audiological examination, the VA examiner stated that the pure tone results indicated a mild to moderately severe bilateral sensorineural hearing loss. The examiner also reported that speech recognition was good at the right ear and excellent in the left. The examiner stated that the Veteran reported frequent difficulty understanding speech in noisy settings. The examiner noted that he did not describe any work situations as problematic. In reporting the functional impact of his tinnitus, the Veteran stated that he rarely notices the tinnitus currently, and it did not result in any significant problems. The Veteran went on to state that the tinnitus was highly distracting about two years ago, but is much better now.

In a January 2014 lumbar spine VA examination, the examiner noted that the Veteran has functional loss and/or functional impairment, stating that he has less movement than normal and pain on movement as contributing factors. However, the examiner also reported that there is no functional impairment due to the lumbar spine disability of an extremity such that no effective function remains other than that which would be equally well served by an amputation with prosthesis. The examiner went on to report that the Veteran's thoracolumbar spine disability does not have an impact on his ability to work.

In a March 2015 VA audiological examination, the Veteran reported that his hearing loss had an impact on his ordinary conditions of daily life, including ability to work, in that he had difficulty understanding conversational speech. The Veteran reported that he had no such impact caused by his tinnitus. The examiner found that pure tone results indicated mild to moderately-severe sensorineural hearing loss bilaterally. The examiner noted that word recognition abilities were excellent for both ears.

In a March 2015 lumbar spine VA examination, a VA examiner describes the impact of the Veteran's lumbar spine condition on his ability to work, stating that the Veteran's disability would impact prolonged walking or standing.

Based on the foregoing, the Board finds the credible and probative evidence that the Veteran is employable outweighs the credible and probative evidence that the Veteran was not employable. The combined functional impact of the Veteran's disabilities has not been shown to preclude the Veteran from finding substantially gainful sedentary employment or manual employment that would not require prolonged standing or walking. The May 2011 and March 2015 VA examinations express limitations only to that of standing or walking for prolonged periods of time. The January 2014 and March 2015 audiological examinations take into account the Veteran's own statements regarding his difficulty hearing, but they also express objective findings that the Veteran had excellent word recognition ability. These disabilities may limit, but would not individually, nor collectively totally prevent the Veteran from securing and keeping employment given his education level and prior work experience. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran was unemployable, and therefore referral for a TDIU evaluation on an extraschedular basis is not warranted. In reaching this decision, the Board considered the benefit of the doubt rule; however, as the preponderance of the evidence is against the Veteran's claim, such rule is not for application. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to an extraschedular rating for a lumbar spine disability is denied.

Entitlement to a TDIU is denied.



____________________________________________
JENNIFER HWA 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs