Citation Nr: 1749166 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 11-31 370 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for residuals of a cold injury.

2. Entitlement to service connection for polyneuropathic peripheral neuropathy, to include as a residual of a cold injury.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

R. Husain, Associate Counsel




INTRODUCTION

The Veteran served on active duty from July 1970 to February 1972.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

In the October 2011 Substantive Appeal (VA Form 9), the Veteran requested a travel board hearing before a Veterans Law Judge. The record shows that the Veteran was scheduled for a November 2016 Travel Board hearing; however, the Veteran did not attend the hearing. As the Veteran did not request a postponement or subsequently submit a motion for a new hearing, the hearing request is deemed withdrawn. See 38 C.F.R. § 20.704(d).

In January 2017, the Board remanded the issues for additional development. The case has since returned to the Board for further consideration.


FINDINGS OF FACT

1. Residuals of a cold injury did not have its onset in service nor are they otherwise related to service.

2. Polyneuropathic peripheral neuropathy did not have its onset in service, is not related to an alleged in-service cold injury, and did not manifest within one year of service discharge.


CONCLUSIONS OF LAW

1. The criteria for service connection for residuals of a cold injury have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2017).
2. The criteria for service connection for polyneuropathic peripheral neuropathy, to include as a residual to a cold injury, have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

The Board has thoroughly reviewed all the evidence in the Veteran's VA file. In every decision, the Board must provide a statement of the reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for the Board's decision. 38 U.S.C.A § 7104(d)(1); Allday v. Brown, 7 Vet. App. 517, 527 (1995). Although the entire record must be reviewed by the Board, it is not required to discuss, in detail, every piece of evidence. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001) (rejecting the notion that the Veterans Claims Assistance Act mandates that the Board discuss all evidence). Rather, the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake, infra.

As noted above, in January 2017, the Board remanded the cold injury and polyneuropathic peripheral neuropathy disability service connection issues to the AOJ for additional development. The Veteran received VA examinations for these disabilities. Under the circumstances, the Board finds that there has been substantial compliance with its remand. See Dyment v. West, 13 Vet. App. 141 (1999); Stegall v. West, 11 Vet. App. 268 (1998).

II. Service Connection 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). "To establish a right to compensation for a present disability, a veteran must show: '(1) the existence of a present disability; (2) in service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'-the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A. Cold injury

After a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for residuals of a cold injury. The reasons follow.

Service personnel records reflect that the Veteran served in Germany between March 1971 and February 1972.
Service treatment records (STRs) do not reflect complaints of or treatment for a cold injury. The Veteran has contended that he may have sought treatment for a cold injury in service. The Veteran's separation examination, dated July 1972, shows a normal clinical evaluation of the lower extremities and feet. No abnormalities were noted.

In a January 1973 private medical record, the Veteran stated he was "perfectly well" until a December 1972 automobile accident, when he sustained injuries to his lower extremity. The Veteran did not mention a cold injury.

In an October 2008 statement, the Veteran indicated that while serving in Germany, he experienced a cold injury when he was standing guard in snow and ice and was not relieved from his post in a timely manner. The Veteran reported in his statement that his "feet were frozen." The Veteran stated that he sought treatment with a physician after service; however, the physician is now deceased, and the medical records are no longer available. The Veteran states he has had symptoms for many years and is taking medicine for the disability.

Private medical records from September 2008 and October 2008 presented with the Veteran's October 2008 statement do not mention a cold injury or related diagnosis.

In April 2017, the Veteran received a VA examination where he was diagnosed with a cold injury. The Veteran stated that he received the cold injury in January 1972 as a part of active duty service where he was required to stand outside in cold weather. The Veteran said that after this incident, his toes and soles of his feet were numb for 36 hours, and since then he has experienced both cold and burning feelings in his toes and feet, as well as numbness in the same location. The examiner opined that the Veteran's symptoms are attributed to vitamin deficiency and diabetes, for which the Veteran is receiving treatment. The Veteran is not service connected for a vitamin deficiency or diabetes.

The examiner opined that it was less likely than not that a cold injury was incurred in or caused by service. The examiner noted that neither the STRs nor post service medical records from 1972 and 1973 mention a cold injury, despite reports of other leg injuries. Additionally, the Board notes that medical records in the years following service discharge do not show complaints related to disabilities related to a cold injury. In other words, when documenting the Veteran's past medical history, there was no notation of a cold injury.

Thus, the first documentation of an allegation of residuals of a cold injury occurred in 2008. The passage of so many years between discharge from active service and the objective documentation of a claimed disability is a factor that weighs against a claim for service connection. Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000).

To the extent that the Veteran attempts to provide a nexus between his cold injury and active service, such statements are outweighed by the April 2017 VA medical opinion. The VA examiner rendered an opinion following a thorough review of the claims file and which is well supported by a reasoned rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

The Board has considered the Veteran's lay statements, but finds the Veteran's STRs, his separation examination, private medical records, and, particularly, the April 2017 VA examination and medical opinion to be highly probative. In weighing the medical and lay evidence of record, the Board finds that the Veteran's contention is outweighed by the competent and probative evidence of record.

In sum, there is no competent and credible evidence of a nexus between the Veteran's cold injury and service. In a January 1973 private medical record, it was documented that the Veteran mentioned that he was "perfectly well" prior to the December 1972 accident. This medical record was created less than one year following service discharge, which tends to establish that the Veteran was not experiencing cold injury residuals during that period of time. Accordingly, the preponderance of the evidence does not support a cold injury in service or a relationship between the current diagnosis of a cold injury and the Veteran's service.

In sum, the Board concludes that the preponderance of the evidence of record is against the Veteran's claim for service connection for residuals of a cold injury. The benefit-of-the-doubt doctrine enunciated in 38 U.S.C.A. § 5107(b) is not applicable, as there is no approximate balance of evidence. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001).

B. Polyneuropathic Peripheral Neuropathy

After a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for polyneuropathic peripheral neuropathy, to include as a residual of a cold injury. The reasons follow.

STRs do not reflect complaints of or treatment for polyneuropathic peripheral neuropathy. The service separation examination report reflects no complaints or diagnoses of polyneuropathic peripheral neuropathy.

In December 1972, the Veteran was involved in a motor vehicle accident that resulted, in part, in compression fractures of the fifth through ninth thoracic vertebrae. In January and February 1973, the Veteran was hospitalized with severe back pain; however, no neurological deficit was diagnosed. In a March 2014 decision for different claims of service connection, the Board found that this accident did not occur during a period of qualifying service, which finding the current Board supports. The Veteran was discharged from active duty service in February 1972, and the accident that occurred was in December 1972.

In a September 2008 statement, the Veteran's private physician indicated that the Veteran reported back and lower extremity pain, diagnosed as polyneuropathy and degenerative disc disease. The physician opined that the "initial injury was related to duties performed [in military service] several years ago."

The Board assigns this opinion a low probative value because the physician does not explain what military duties he is referring to, or provide a rationale as to how the in service activities resulted in polyneuropathic peripheral neuropathy.

In an October 2008 statement, the Veteran's private podiatrist indicated that the Veteran reported lower extremity pain consistent with polyneuropathic peripheral neuropathy. The podiatrist opined that the "initial injury was related to duties performed as a military officer several years ago."

The Board assigns this opinion a low probative value as well because this physician also does not explain what military duties he is referring to, nor does he provide a rationale as to how the in service activities resulted in polyneuropathic peripheral neuropathy.

In the Veteran's October 2008 statement mentioned above, the Veteran contends that his peripheral neuropathy is related to his cold injury. The Veteran stated that he has experienced pain and discomfort ever since his original cold injury.

The Veteran received a VA examination in April 2017 for his peripheral nerves. The examiner opined that the Veteran's polyneuropathic peripheral neuropathy was less likely than not incurred in or caused by an in service injury. The examiner stated that the Veteran's service record does not reflect complaints, diagnosis, or treatment for polyneuropathic peripheral neuropathy. The examiner stated that the Veteran's private physicians imply that the polyneuropathic peripheral neuropathy disability is related to a back injury. The examiner opined that the Veteran's symptoms are attributed to vitamin deficiency and diabetes, for which the Veteran is receiving treatment. The examiner also opined that the Veteran's polyneuropathic peripheral neuropathy is less likely than not due to an in service cold injury. The Veteran is not service connected for a vitamin deficiency or diabetes.

Neuropathy is "a general term denoting functional disturbances and/or pathological changes in the peripheral nervous system." Ferraro v. Derwinski, 1 Vet. App. 326, 329 (1991); Kellar v. Brown, 6 Vet. App. 157, 161 (1994). Therefore, polyneuropathic peripheral neuropathy falls under the category of an organic disease of the nervous system, which is listed as a "chronic disease" under 38 C.F.R. § 3.309(a). As such, the presumptive provisions of 38 C.F.R. § 3.303(b) for "chronic" in service symptoms, "continuous" post-service symptoms, or manifesting within one year of service separation at 38 C.F.R. § 3.307 apply to polyneuropathic peripheral neuropathy.

For chronic diseases service connection may be established under 38 C.F.R. § 3.303(b) if a chronic disease or injury is shown in service, and subsequent manifestations of the same chronic disease or injury at any later date, however remote, are shown, unless clearly attributable to intercurrent causes. For a showing of a chronic disorder in service, the mere use of the word chronic will not suffice; rather, there is a required combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Continuity of symptomatology after service is required where a condition noted during service is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b).

Additionally, as a chronic disease, peripheral neuropathy will be considered to have been incurred in or aggravated by service if the disease becomes manifest to a compensable degree within one year from the date of service separation. 38 C.F.R. § 3.307(a)(3).

The record does not support that the Veteran's polyneuropathic peripheral neuropathy manifested in service or within one year of the Veteran's service discharge of service; therefore, the Veteran is not entitled to presumptive service connection for a chronic disease.

In sum, there is no competent and credible evidence of a nexus between the Veteran's cold injury and service. The record does not reflect a complaint, diagnosis, or treatment for polyneuropathic peripheral neuropathy in service or within one year after service. As noted above, in January 1973, a private medical record documents that the Veteran mentioned that he was "perfectly well" prior to the December 1972 accident, which record is within one year of the Veteran's service discharge and tends to establish that the Veteran was not experiencing peripheral neuropathy during that period of time. The April 2017 examiner opined that the Veteran's peripheral neuropathy is a result of a non-service connected back injury. Accordingly, the evidence does not support the occurrence of polyneuropathic peripheral neuropathy in service or a relationship between the current diagnosis of polyneuropathic peripheral neuropathy and the Veteran's service.

The Board has considered the Veteran's lay statements, but finds the Veteran's STRs, his separation examination, private medical records, and the April 2017 VA examination to be highly probative. In weighing the medical and lay evidence of record, the Board finds that the Veteran's contentions and those of his private physicians are outweighed by the competent and probative evidence of record, here, particularly, the April 2017 medical opinion.

In sum, the Board concludes that the preponderance of the evidence of record is against the Veteran's claim for service connection for polyneuropathic peripheral neuropathy. The benefit-of-the-doubt doctrine enunciated in 38 U.S.C.A. § 5107(b) is not applicable, as there is no approximate balance of evidence. Gilbert, 1 Vet. App. 49, 53; Ortiz, 274 F.3d 1361.


ORDER

Entitlement to service connection for residuals of a cold injury is denied.

Entitlement to service connection for polyneuropathic peripheral neuropathy, to include as a residual of a cold injury, is denied.




____________________________________________
A. P. SIMPSON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs