﻿Citation Nr: AXXXXXXXX
Decision Date: 01/22/19 Archive Date: 01/22/19

DOCKET NO. 180918-341
DATE: January 22, 2019

ORDER

The issue of a rating in excess of 20 percent for service-connected diabetes is dismissed.

Entitlement to service connection for Parkinsonism, to include as secondary to bipolar disorder, is granted.

Entitlement to service connection for hypertension is denied.

Entitlement to a rating in excess of 30 percent prior to January 30, 2017, for service-connected bipolar disorder, is denied.

Entitlement to a 100 percent rating from January 30, 2017 and after, for service-connected bipolar disorder is granted.

Entitlement to an effective date earlier than March 28, 2016 for service connection for bipolar disorder is denied.

Entitlement to an effective date earlier than June 15, 2017 for service connection for diabetes is denied.

Entitlement to special monthly compensation based on aid and attendance is granted.

Entitlement to an effective date earlier than June 15, 2017 for special monthly compensation based on housebound criteria is denied.

Entitlement to an effective date prior to January 30, 2017, for a total disability rating based on individual unemployability (TDIU) is denied

Entitlement to an effective date of January 30, 2017, but no earlier, for basic eligibility to Dependents’ Educational Assistance is granted.

FINDINGS OF FACT

1. On October 2, 2018, prior to the promulgation of a decision in the appeal, the Board received notification from the Veteran, through his authorized representative, that a withdrawal of the issue of a rating in excess of 20 percent for service-connected diabetes is requested.

2. The Veteran’s Parkinsonism manifested as a result of medication prescribed to treat the Veteran’s acquired psychiatric disorder.

3. The evidence of record is insufficient to establish that the Veteran’s hypertension was caused by, or the result of the Veteran’s period of service.

4. Prior to January 30, 2017, the Veteran exhibited bipolar disorder symptoms which caused impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with normal routine behavior, self-care and conversation). 

5. After January 30, 2017, the Veteran exhibited bipolar disorder symptoms which resulted in total occupational and social impairment. 

6. The Veteran was denied entitlement to service connection for a psychiatric disorder in a November 1983 Board decision, a July 1986 Board decision, an April 1991 rating decision, and a July 1994 rating decision; the Veteran did not file timely appeals, and therefore, these decisions became final.

7. The Veteran submitted an intent to file a claim on March 28, 2016, and subsequently filed a petition to reopen a claim for service connection for bipolar disorder, which was subsequently granted, effective March 28, 2016.

8. The Veteran submitted an intent to file a claim on June 15, 2017, for diabetes mellitus, which was subsequently granted, effective June 15, 2017.

9. The evidence of record suggests that the Veteran has need of regular aid and attendance due to his service-connected disabilities.

10. Prior to June 15, 2017, the Veteran did not have a combined rating of 60 percent separate from the 100 percent rating for bipolar disorder, and the evidence is insufficient to show that the Veteran was permanently housebound during this stage. 

11. Prior to January 30, 2017, the evidence does not establish that the Veteran’s service-connected disabilities prevented him engaging in substantially gainful employment, and after January 30, 2017, due to grant of 100 percent service connection, a TDIU is moot.

12. Since January 30, 2017, the evidence indicates that the Veteran had a total disability that was permanent in nature.

CONCLUSIONS OF LAW

1. The criteria for withdrawal of an appeal of the issue of a rating in excess of 20 percent for diabetes by the Veteran have been met. 38 U.S.C. § 7105(b)(2), (d)(5); 38 C.F.R. § 20.204.

2. The criteria for service connection for Parkinsonism have been met. 38 U.S.C. §§ 1110, 1137; 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310.

3. The criteria for service connection for hypertension have not been met. 38 U.S.C. §§ 1110, 1111; 38 C.F.R. §§ 3.303, 3.306, 3.307, 3.309.

4. The criteria for a rating in excess of 30 percent prior to January 30, 2017, for service-connected bipolar disorder, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.14, 4.21, 4.130, Diagnostic Code 9432.

5. The criteria for a 100 percent rating after January 30, 2017, for service-connected bipolar disorder, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.14, 4.21, 4.130, Diagnostic Code 9432.

6. The criteria for an effective date earlier than March 28, 2016, for the grant of service connection for bipolar disorder, have not been met. 38 U.S.C. §§ 5110, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.155, 3.400.

7. The criteria for an effective date earlier than June 15, 2017, for the grant of service connection for diabetes, have not been met. 38 U.S.C. §§ 5110, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.155, 3.400.

8. The criteria for entitlement to special monthly compensation based on aid and attendance have been met. 38 U.S.C. §§ 1114, 5103, 5103A, 5107; 38 C.F.R. §§ 3.350, 3.352.

9. The criteria for an effective date earlier than June 15, 2017 for special monthly compensation based on housebound criteria have not been met. 38 U.S.C. §§ 1114, 5103, 5103A, 5107; 38 C.F.R. §§ 3.350. 

10. The criteria for an effective date earlier than January 30, 2017 for a TDIU have not been met. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19.

11. The criteria for an effective date of January 30, 2017, but no earlier, for basic eligibility to Dependents' Educational Assistance have been met. 38 U.S.C. §§ 3500, 3501, 5110; 38 C.F.R. § 3.400, 3.807.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served active duty in the United States Army from September 1966 to August 1969. 

The Board notes that the issue of service connection for sleep apnea was granted in a June 2018 rating decision, and is therefore no longer on appeal. 

As a result of the grant of a 100 percent rating for bipolar disorder, effective January 30, 2017 herein, the Board has recharacterized the Veteran’s claim for an earlier effective date for TDIU accordingly as entitlement to a TDIU prior to January 30, 2017. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program.

SERVICE CONNECTION

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be established for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that disease was incurred in service. 38 C.F.R. § 3.303(d).

Generally, to prevail on a claim of service connection on the merits, there must be competent evidence of (1) current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence or other competent evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. See Hickson v. West, 12 Vet. App. 247 (1999); Jandreau v. Nicholson, 492 F.3d at 1372.

Where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and a disease enumerated by the regulations become manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1110, 1133; 38 C.F.R. §§ 3.307, 3.309

Service connection may also be established for disability which is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). Further, a disability which is aggravated by a service-connected disability may be service connected to the degree that the aggravation is shown. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439.

1. Service connection for Parkinson's disease 

The Veteran contends that he has Parkinson’s disease or tremors due to his period of service.

At the outset, the Board notes that the Veteran does not have a diagnosis of Parkinson’s disease; rather, the Veteran has been found to have Parkinsonism, or Parkinson-like symptoms, such as tremors.

The Board also notes that, at the time of the rating decision, the Veteran claimed service connection for Parkinson’s disease, to include as due to exposure to herbicides. Regulations provide, in part, that if a veteran was exposed to an herbicide agent during active service in the Vietnam era, certain diseases, including Parkinson's disease, shall be service-connected if the requirements of 38 C.F.R. § 3.307 (a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307 (d) are also satisfied. Here, the Veteran’s Vietnam service has been established, and he is presumed to have been exposed to herbicides. The Board notes, however, that while Parkinson's disease is a disease presumptively associated with herbicide exposure in Vietnam, Parkinsonism is not. Nevertheless, the Board will consider all theories of service connection, to include service connection on a direct causation basis. See Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994). 

In an October 2018 statement, the Veteran, through his representative, raised the theory of service connection for Parkinsionism to include as secondary to service-connected bipolar disorder. Specifically, the Veteran asserted that his Parkinsonism is due to the medication for his service-connected bipolar disorder.

The evidence of record indicates that the Veteran experienced Parkinson-like symptoms in the form of tremors in the hand. In a July 2017 VA medical record, the examiner noted that the Veteran did not exhibit signs or symptoms suggestive of Parkinson's disease with the exception of a resting tremor in his right thumb. In the examiner’s assessment as to cognitive impairment, the examiner reported that differential diagnosis favors previous polypharmacy as opposed to idiopathic progressive dementia. 

Likewise, in a September 2018 VA medical record, the examiner noted prior Parkinsonism (Parkinson-like symptoms) with the use of certain medications used for treatment of bipolar disorder. The examiner stated that a combination of medications may have caused such symptoms and planned to adjust medication accordingly. 

After review of the record, the Board finds that the weight of the evidence indicates that the Veteran has a current diagnosis of Parkinsonism which is proximately due to his service-connected bipolar disorder. Therefore, service connection is warranted. 

2. Service connection for hypertension

The Veteran contends that his hypertension is due to his period of service.

The Board finds that the evidence of record is insufficient to establish that service connection for hypertension is warranted.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has evidence of current treatment for hypertension, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d). Specifically, the Veteran’s service treatment records do not indicate complaint of or treatment for hypertension during service. The Board also notes that, in a February 2018 VA examination, the examiner noted that the Veteran’s hypertension predates the Veteran’s service-connected diabetes, and is therefore, not secondary to the service-connected disability under 38 C.F.R § 3.310(a). Moreover, while hypertension may be considered for presumptive service connection under 38 C.F.R § 3.309, the record does not indicate manifestation of hypertension within one year of the Veteran’s separation from service. Therefore, service connection is not warranted.

The Board notes that, during the appeals process, the Veteran, through his representative, sent timely evidence in the form of general treatises regarding a relationship between hypertension and exposure to herbicides. The Board notes that medical treatise evidence can, in some circumstances, constitute competent medical evidence. See Wallin v. West, 11 Vet. App. 509, 514 (1998); see also 38 C.F.R. § 3.159 (a)(1) (noting that competent medical evidence may include statements contained in authoritative writings such as medical and scientific articles and research reports and analyses). However, in the present case, the treatise evidence of record is general in nature and does not contain any information or analysis specific to the Veteran's case. Therefore, the evidence is insufficient to establish a nexus for direct service connection.

While the Veteran believes that his hypertension is related to his period of service, the Board reiterates that the preponderance of the evidence weighs against findings that complaint of or treatment for in-service hypertension occurred or presumptive service connection based on manifestation within a year of separation from service.

INCREASED RATING

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, otherwise the lower rating will apply, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person’s ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. See Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods based on the facts found- a practice known as “staged” ratings.

In general, all disabilities, including those arising from a single disease entity, are rated separately, and disability ratings are then combined in accordance with 38 C.F.R. § 4.25. Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a Veteran’s service-connected disabilities. 38 C.F.R. § 4.14. It is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes, however the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). In accordance with 38 C.F.R. §§ 4.1, 4.2 and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed the service medical records and all other evidence of record pertaining to the history of the Veteran’s service-connected disability. The Board has found nothing in the historical record that would lead to the conclusion that the current evidence of record is not adequate for rating purposes.

The Veteran is currently rated as 30 percent disabling prior to April 16, 2017, and 70 percent disabling after April 16, 2017 for bipolar disorder under 38 C.F.R. § 4.130, Diagnostic Code 9423. Under Diagnostic Code 9432, which is governed by a General Rating Formula for Mental Disorders (General Rating Formula), a 30 percent rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130.

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and/or difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and/or inability to establish and maintain effective relationships. Id. 

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and/or memory loss for names of close relatives, own occupation, or own name). Id.

When determining the appropriate disability evaluation to assign, the Board’s primary consideration is a veteran’s symptoms, but it must also make findings as to how those symptoms impact a veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436 (2002). Because the use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442. Nevertheless, all ratings in the General Rating Formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran’s impairment must be “due to” those symptoms, a Veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

A rating in excess of 30 percent prior to April 16, 2017, and 70 percent from April 16, 2017 and after, for service-connected bipolar disorder.

The Veteran contends that his acquired psychiatric disorder, to include bipolar disorder, is such that a rating in excess of 30 percent prior to April 16, 2017 and in excess of 70 from April 16, 2017 and after, is warranted.

The record of evidence indicates that the Veteran regularly attended VA therapy in 2015. The Veteran reported that he experienced highs and lows. He also reported that he had not had a manic episode since 1995. 

In a September 2016 VA examination, the examiner reported that the Veteran was adequately groomed, but not clean shaven, and was dressed in weather-appropriate clothing. The examiner noted that the Veteran’s mood was depressed, and he provided minimal, inconsistent eye contact and mostly looked down. The examiner reported that the Veteran’s thought process was logical and linear, with no unusual thought content.

The Veteran reported that he continued to work outside as much as he can and maintained a garden. He also stated that he engaged in scrap booking and photo albums. The Veteran went on to report that he mostly spends his time working on cars.

The examiner stated that the Veteran’s symptoms included hypervigilance, depressed mood and anxiety. The examiner also noted that the Veteran reported feelings of hopelessness, helplessness and tearfulness. The examiner reported that the Veteran denied suicidal or homicidal ideation. The examiner noted that the Veteran has experienced several psychiatric hospitalizations and received extensive psychiatric treatment. The examiner summarized the Veteran’s occupational and social impairment as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

In a January 30, 2017 VA medical record, the examiner noted that the Veteran mentioned depressive episodes with some psychosis (bizarre thinking), but no clear manic episodes. The examiner further noted the Veteran was worried about his ability to live independently, noting that he was unable to drive and was living with his daughter. The examiner explained that his previous caretaker, his mother, had recently died. The examiner noted that the Veteran denied hallucinations and paranoia, suicidal or homicidal ideation or feelings of hopelessness, mood swings or irritability, nightmares and flashbacks, insomnia, or loss of appetite.

In a February 2018 VA examination, the Veteran reported current concerns of being too depressed, and described his mood as up and down. The Veteran stated that he had trouble initiating and maintaining sleep but was not sure what was contributing to his sleep difficulties. He endorsed fatigue and low energy throughout the day.

The examiner stated that the Veteran appeared on time and was dressed appropriately for the weather. The examiner also noted that the Veteran’s hygiene was good, and he was oriented to person, place, time, and situation. The examiner further noted that his speech was within normal limits for rate, tone, volume, prosody and his thought process was linear. There was no evidence of hallucinations. The examiner reported that the Veteran’s judgment appeared good, his mood was stated as relaxed, and his affect was within normal limits.

The examiner stated that Veteran was recently hospitalized for three weeks due to his depressive symptoms. The examiner noted that the Veteran denied any suicidal or homicidal ideation, but endorsed numerous other symptoms that meet criteria for a Major Depressive Episode. The examiner reported that the Veteran noted that although he tends to keep to himself, he is becoming more active within the state Veteran’s Home, attends multiple groups at the local VA, attends church every month, has a positive relationship with his daughter, and is hopeful for the future. The examiner went on to report that the Veteran continued to experience mild-moderate depressive symptoms that impair occupational and social functioning with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

In an April 2018 private medical record, the examiner reviewed and summarized that Veteran’s history of bipolar disorder. The examiner found that the Veteran has had severe and pervasive mental illness consistent with profound symptoms of bipolar affective disorder, both manic and depressed. The examiner noted that the Veteran’s disorder was treatment-resistant, failing multiple trials of different medications and requiring electroconvulsive therapy on at least two occasions. The examiner stated that the Veteran experienced, at best, short-term partial remissions. The examiner reported that the Veteran was persistently suicidal and has made a near-lethal suicide attempt. The examiner noted that, during his interview, the Veteran was profoundly depressed, continued to be suicidal, and was deteriorating rapidly. The examiner stated that the Veteran has been pervasively mentally ill since 1981, and was incapable of functioning even in the basic, day-to-day social settings of his family, let alone that complex interactions required in occupational environment. The examiner stated that the Veteran was at high risk for completed suicide and repetitive psychiatric hospitalization. The examiner determined that the Veteran’s prognosis was poor.

In an August 2018 statement in support of claim, the Veteran stated that he checked himself in the emergency room at the end of 2017 because he was scared and hallucinating. He reported that he has distanced himself from his family and cries continuously. He further stated that he has stopped participating in activities at his living facility. The Veteran further reported that in May 2018, he attempted to be admitted to the hospital because of his paranoia due to psychiatric disorder, but was denied admittance because he was not suicidal. The Veteran stated that he is still having uncontrollable anxiety attacks, constant night terrors, crying episodes and he cannot go anywhere without panicking. 

In an August 2018 statement in support of claim, the Veteran’s daughter reported that the Veteran had been hospitalized multiple times since January 2018 due to his psychiatric disorder. She also reported that the Veteran has withdrawn from all activities and group meetings at his independent living facility. She reported an increase in night terrors, crying episodes, and anxiety attacks. She further reported that, due to his anxiety, the Veteran is no longer able to use computers to pay his bills. She also noted that her father has expressed thoughts of hopelessness, stating that it would be his last day.

After review of the record, the Board finds that, prior to January 30, 2017, a 30 percent rating is warranted. During this time, the Veteran exhibited symptoms of anxiety and depressed mood. His occupational and social impairment was described as impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with normal routine behavior, self-care and conversation). Therefore, the Veteran’s psychiatric disorder more closely approximates to a 30 percent disabling rating.

A 50 percent rating is not warranted prior to January 30, 2017, because the record does not indicate flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking, disturbances of motivation and mood; and/or difficulty in establishing and maintaining effective work and social relationships. 

The evidence indicates that, prior to January 30, 2017, the Veteran consistently denied suicidal ideation. Moreover, the Veteran did not experience symptoms of speech intermittently illogical, obscure, or irrelevant. The evidence does not establish that the Veteran’s panic or depression was affecting the ability to function independently, appropriately, and effectively. Furthermore, the record does not indicate that the Veteran has impaired impulse control, obsessional rituals, symptoms of spatial disorientation, neglect of personal appearance and hygiene, and/or inability to establish and maintain effective relationships. While the evidence suggests that the Veteran experiences anxiety in stressful situations, the evidence does not establish that the Veteran has difficulty in adapting to stressful circumstances. Therefore, a 70 percent disabling evaluation is not warranted.

Prior to January 30, 2017, the evidence of record does not show that the Veteran’s symptoms produce total occupational and social impairment as to warrant a 100 percent rating. The Veteran has been able to maintain relationships with his family and friends. The record also does not establish that the Veteran is in persistent danger of hurting himself or others. There has also been no evidence of hallucinations, delusions, gross impairment in thought processes or communication, grossly inappropriate behavior, intermittent inability to perform activities of daily living, or disorientation to time or place. Furthermore, while the record indicates some memory loss, it does not show memory loss so severe that the Veteran forgets the names of close relatives, his own occupation, or his name. Therefore, a 100 percent rating is not warranted.

The record of evidence indicates that in January 2017, the Veteran’s symptoms worsened. Symptoms include depressive episodes with psychosis, hopelessness, and suicidal ideation. The Veteran has experienced multiple hospitalizations due to his acquired psychiatric disorder since January 2017. Moreover, the April 2018 private medical record indicates he was incapable of functioning even in the basic, day-to-day social settings of his family, let alone the complex interactions required in occupational environment. As the evidence indicates total social and occupational impairment, the Board finds that a 100 percent rating, from January 30, 2017 and thereafter, is appropriate.

In reaching this decision, the Board has considered the Veteran’s lay statements and the supporting statements submitted on his behalf. The Board notes that the Veteran is competent to report observations with regard to the severity of his symptomatology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board finds these lay statements to be credible and consistent with the ratings now assigned. To the extent he argues his symptomatology is more severe prior to January 30, 2017, the Veteran’s statements must be weighed against the other evidence of the record. Here, the specific examination findings of trained health care professionals and documented medical treatment records are of greater probative weight than the more general lay assertions that a rating higher than 30 percent is warranted.

EARLIER EFFECTIVE DATE FOR SERVICE CONNECTION

Generally, and except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation (DIC) based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400. If a claim for disability compensation, i.e., service connection, is received within one year after separation from service, the effective date of entitlement is the day following separation or the date entitlement arose. 38 C.F.R. § 3.400 (b)(2)(i). 

A rating decision becomes final and binding if the Veteran does not timely perfect an appeal of the decision. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104 (a), 3.160(d), 20.200, 20.302, 20.1103.

However, 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) are applicable only where the increase precedes the claim, provided also that the claim is received within one year after the increase. In those cases, the Board must determine under the evidence of record the earliest date that the increased rating was ascertainable. Hazan v. Gober, 10 Vet. App. 511 (1997); Harper v. Brown, 10 Vet. App. 125 (1997).

1. Entitlement to an effective date earlier than March 28, 2016 for service connection for bipolar disorder

The Veteran contends that an effective date earlier than March 28, 2016 for service connection for bipolar disorder is warranted.

The Veteran filed a claim for a psychological condition in September 1981. In a February 1982 rating decision, service connection for a nervous disorder was denied. The Veteran properly affected an appeal to the Board of Veteran Appeals. In a November 1983 Board decision, the Board denied service connection for a psychiatric disorder. The Veteran has not raised a claim of clear and unmistakable error in this rating decision. Therefore, this decision is final. 

In December 1985, the Veteran submitted an informal request to reopen his claim for service connection for a psychiatric disorder. In a January 1986 rating decision, the RO confirmed and continued the prior denial of service connection for psychiatric disorder. The Veteran properly affected an appeal to the Board of Appeals. In a July 1986 Board decision, the Board continued and confirmed service connection for a psychiatric disorder. The Veteran has not raised a claim of clear and unmistakable error in this rating decision. Therefore, the decision is final.

In December 1990, the Veteran submitted a request to reopen his claim for service connection for a psychiatric disorder. In an April 1991 rating decision, the RO confirmed and continued the prior denial of service connection for psychiatric disorder. In a May 1991 correspondence, VA notified the Veteran of this decision and informed the Veteran of appellate rights. The Veteran did not complete a substantive appeal for that decision, nor has he raised a claim of clear and unmistakable error in this rating decision. Therefore, the decision is final.

In February 1994, the Veteran submitted a request to reopen his claim for service connection for a psychiatric disorder. In a July 1994 rating decision, the RO confirmed and continued the prior denial of service connection for psychiatric disorder. In an August 1994 correspondence, VA notified the Veteran of this decision and informed the Veteran of appellate rights. The Veteran did not complete a substantive appeal for that decision, nor has he raised a claim of clear and unmistakable error in this rating decision. Therefore, the decision is final.

On March 28, 2016, the Veteran submitted an intent to file, and on May 19, 2016, the Veteran filed for entitlement to service connection for bipolar disorder. The Veteran’s current effective date is based on the filing of this intent to file, pursuant to 38 C.F.R. § 3.400. The Board notes that the record does not establish any filing of a claim of any psychiatric disorder between July 1994 and March 2016.

The Board acknowledges the arguments set forth by the Veteran and is sympathetic to his contentions. However, the pertinent legal authority governing effective dates is clear and specific, and the Board is bound by that authority. Under 38 C.F.R. § 3.816(c)(2), the effective date for a grant of service connection is the date the claim was received or the date entitlement arose, whichever is later. As such, the RO assigned the earliest possible effective date for its grant of the claim, which based on the procedural history outlined above, was determined to be March 28, 2016.

Accordingly, an effective date prior to the date of the Veteran’s claim to reopen on March 28, 2016 is not warranted.

2. Entitlement to an effective date earlier than for service connection for diabetes

The Veteran contends that an earlier effective date for service connection for diabetes is warranted.

On June 15, 2017, the Veteran filed an intent to file, and on November 2017, the Veteran filed for entitlement to service connection for diabetes mellitus. In a March 2018 rating decision, service connection for diabetes was granted, effective June 15, 2017. The Veteran’s current effective date is based on the filing of this intent to file, pursuant to 38 C.F.R. § 3.400. The Board notes that the record does not establish any filing of a claim of diabetes before June 15, 2017.

The Board acknowledges the arguments set forth by the Veteran and is sympathetic to his contentions. However, the pertinent legal authority governing effective dates is clear and specific, and the Board is bound by that authority. Under 38 C.F.R. § 3.816(c)(2), the effective date for a grant of service connection is the date the claim was received or the date entitlement arose, whichever is later. As such, the RO assigned the earliest possible effective date for its grant of the claim, which based on the procedural history outlined above, was determined to be June 15, 2017.

Accordingly, an effective date prior to the date of the Veteran’s claim on June 15, 2017 is not warranted.

SPECIAL MONTHLY COMPENSATION

1. Entitlement to special monthly compensation based on aid and attendance

The Veteran contends that his service-connected conditions are such that special compensation based on aid and attendance is warranted.

Compensation at the aid and attendance rate is payable when the veteran, due to service-connected disability, has suffered the anatomical loss or loss of use of both feet or one hand and one foot, or is blind in both eyes, or is permanently bedridden or so helpless as to be in need of regular aid and attendance. 38 U.S.C. § 1114 (l); 38 C.F.R. § 3.350 (b).

Determinations as to the need for regular aid and attendance are factual and must be based upon the actual requirements for personal assistance from others. In making such determinations, consideration is given to such conditions as: the inability of the claimant to dress or undress himself, or to keep himself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without assistance; the inability of the claimant to feed himself through loss of coordination of upper extremities or through extreme weakness; the inability to attend to the wants of nature; or incapacity, either physical or mental, which requires care or assistance on a regular basis to protect a claimant from hazards or dangers incident to one’s daily environment. It is not required that all of the disabling conditions enumerated be present before a favorable rating is made. 38 C.F.R. § 3.352 (a). The particular personal functions that the claimant is unable to perform should be considered in connection with his condition as a whole. It is only necessary that the claimant be so helpless as to be in need of regular aid and attendance, not that there is a constant need. “Bedridden” constitutes a condition which, through its essential character, actually requires that an individual remain in bed. The fact that a claimant has voluntarily taken to bed, or that a physician has prescribed bed rest for a lesser or greater portion of the day will not suffice. Id.

The Veteran is service-connected for bipolar disorder, obstructive sleep apnea associated with bipolar disorder, Parkinsonism, and diabetes mellitus.

An April 2018 private medical examination stated that the Veteran was incapable of functioning even in the basic, day-to-day social settings of his family. A September 2018 VA medical record indicates that the Veteran has dependent self-care and that he lives at the Idaho State Veteran’s Home with a roommate. September 2018 VA medical records also indicate that, during his most recent hospital stay, the Veteran needed regular aid to complete basic hygiene needs due to his service-connected bipolar disorder.

Resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran is entitled to SMC for aid and attendance.

2. An effective date earlier than June 15, 2017 for special monthly compensation based on housebound criteria

The Veteran contends that his service-connected disabilities are such that his special monthly compensation (SMC) based on housebound criteria warrants an effective date earlier than June 15, 2017.

If a veteran has a single service-connected disability rated as 100 percent disabling, he is entitled to compensation benefits at the “housebound” rate if he: (1) has additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems; or (2) is “permanently housebound” by reason of service-connected disability or disabilities. 38 U.S.C. § 1114 (s); 38 C.F.R. § 3.350(i). The “permanently housebound"” requirement is met when the veteran is substantially confined, as a direct result of service-connected disabilities, to his dwelling and the immediate premises or, if institutionalized, to the ward or clinical areas, and it is reasonably certain that the disability or disabilities and resultant confinement will continue throughout his lifetime.

Prior to June 15, 2017, the Veteran was service-connected at 100 percent solely for bipolar disorder; however, the Veteran did not have any other service-connected conditions at a compensable degree prior to June 15, 2017. Moreover, prior to June 15, 2017, the evidence is insufficient to establish that the Veteran was permanently housebound. Therefore, the preponderance of the evidence is against a finding that the Veteran was housebound prior to June 15, 2017, and the claim must be denied.

The Board notes that service connection has been granted for Parkinsonism in the above decision and that the subsequently assigned initial rating may affect the issue of an earlier effective date for the grant of SMC based on housebound criteria. Therefore, the Veteran may file a Supplemental Claim if he wishes. Specific instructions for filing a Supplemental Claim are included with this decision. 

TDIU

An effective date earlier than January 30, 2017 for a TDIU.

The Veteran also contends that the proper effective date for the grant of a TDIU is earlier than April 16, 2017.

At the outset, the Board notes that, with this decision, the Board has granted a 100 percent evaluation from January 30, 2017 and thereafter. As such, from January 30, 2017 and after, the issue of a TDIU is moot. 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate “when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation.” 38 C.F.R. §§ 3.340(a)(1), 4.15.

For the Veteran to prevail on a claim for a TDIU, the sole fact that the Veteran is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. See Van Hoose v. Brown, 4 Vet. App. 361 (1993). In determining whether the Veteran is entitled to a TDIU, consideration may be given to the Veteran’s level of education, special training, and previous work experience, but not to his or her age or the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 

Marginal employment is not considered substantially gainful employment. 38 C.F.R. § 4.16(a). Substantially gainful employment means, essentially, that the work provides income above the poverty level established by the United States Department of Commerce, without benefit of protected family employment or a sheltered workshop. 38 C.F.R. § 4.16(a).

A TDIU may be assigned where the schedular rating is less than total when the claimant is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). For the purpose of one 60 percent disability or one 40 percent disability, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a)(2).

An extraschedular total rating based on individual unemployability may be assigned in the case of a Veteran who fails to meet the percentage requirements, but who is unemployable by reason of service-connected disability. 38 C.F.R. § 4.16(b). The United States Court of Appeals for Veterans Claims (Court) has recognized that, “the effect of a service-connected disability appears to be measured differently for purposes of extra-schedular consideration under 38 C.F.R. § 3.321(b)(1)... [than] for purposes of a TDIU claim under 38 C.F.R. § 4.16.” Kellar v. Brown, 6 Vet. App. 157, 162 (1994). While the former regulatory provision requires marked interference with employment, the latter requires evidence of unemployability. Id.

Prior to January 30, 2017, the Veteran was service-connected for bipolar disorder at a 30 percent rating. Therefore, the Veteran did not meet the schedular criteria for a TDIU. 

In the September 2017 VA examination, examiner summarized the Veteran’s occupational and social impairment as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

In November 2017, the Veteran filed a claim for TDIU. The Veteran stated that he was last employed at a private hospital as a chief accountant and assistant controller from May 1974 to August 1982. The Veteran stated that he had to leave his last job due to his disability. In a December 2017 Request for Information, the private hospital stated that they had no record of the employee.

In an April 2018 private medical record, the examiner stated that the Veteran has been unable to secure meaningful, gainful, and consistent employment since he stopped working in 1981. 

After review of the record, the Board finds that, prior to January 30, 2017, the evidence does not establish that the Veteran was unable to find and follow substantially gainful employment. The Veteran’s medical records contemporary to the time period in question indicate that during this stage, the Veteran’s mental health did not prevent employment. Moreover, though the April 2018 private opinion suggests an inability to find and follow substantially gainful employment during this stage, this opinion is inconsistent with the Veteran’s work history and prior medical record. Based on the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran was unemployable prior to January 30, 2017, and therefore referral for a TDIU evaluation on an extraschedular basis is not warranted. In reaching this decision, the Board considered the benefit of the doubt rule; however, as the preponderance of the evidence is against the Veteran’s claim, such rule is not for application. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

An effective date earlier that April 16, 2017, for basic eligibility to Dependents' Educational Assistance 

The Veteran contends that an effective date earlier than April 16, 2017, for DEA benefits pursuant to 38 U.S.C., Chapter 35, is warranted. 

In the case of a veteran who is alive, the conditions for basic eligibility for DEA include: (1) the Veteran's discharge from service under conditions other than dishonorable; and (2) the Veteran has a permanent total service-connected disability. 38 C.F.R. § 3.807 (a) (2017). Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340 (a). Permanence of disability will be taken to exist when such impairment is reasonably certain to continue throughout the life of the disabled person. 38 C.F.R. § 3.340 (b). The term "total disability permanent in nature" for the purpose of DEA benefits means any disability rated total for the purposes of disability compensation which is based on impairment reasonably certain to continue throughout the life of the disabled person. 38 U.S.C. § 3501(a)(7).

In this case, since the effective date for DEA benefits is directly related to a finding that the Veteran had a total disability that was permanent in nature by virtue of the 100 percent disabling rating for bipolar disorder granted herein, an effective date of January 30, 2017, for Chapter 35 benefits is warranted as the Veteran has been granted total disability from this effective date.

 

JENNIFER HWA

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Ford, Associate Counsel